IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JUDSON S. SPEARS,            )
                            )
            Plaintiff,       )
                            )
      v.                    )      1:15cv859
                            )
WATER & SEWAGE AUTHORITY OF  )
CABARRUS COUNTY,            )
                            )
            Defendant.       )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This is an action for wrongful discharge by Plaintiff Judson S. Spears, who was terminated by his employer, the Water & Sewage Authority of Cabarrus County ("WSACC"), on October 14, 2013. Before the court is WSACC's motion for summary judgment. (Doc. 17.) The motion is fully briefed and ready for decision. For the reasons set forth below, the motion will be granted and the complaint will be dismissed.

## I.    BACKGROUND

As they are construed in a light most favorable to Spears as the nonmoving party, the facts are as follows.

Spears was employed by WSACC in 1996 as an Electrical and Instrumentation Technician. His duties included the maintenance and repair of WSACC's wastewater facility, specifically the "difficult technical skilled work in the installation, maintenance, and repair of" control systems involved in the

wastewater pumping and treatment at WSACC facilities. (Doc. 25-3 at 1; Doc. 34 at 4-5.) While Spears dealt mostly with electrical issues, he also served as a mechanic, responsible for fixing failing equipment. (Doc. 25-3; Doc. 34 at 4-5.)

WSACC promoted Spears to Electrical and Instrumentation Supervisor around 2000. (Doc. 34 at 6.) The functions of this position generally include his previous responsibilities, but with an added management role of supervising electrical technicians. (Id.; Doc. 28-2 at 1.) Spears served in this role until he was terminated on October 14, 2013. (Doc. 34 at 8.) At one time, Spears managed up to three employees, but by 2010, he was only managing one, Lynn Ritchie. (Id.; Doc. 18-2 at 15; Doc. 36 at 12.) When the employees he was managing left, Spears' workload increased. (Doc. 34 at 12.)

On September 9, 2013, Spears injured his back while at work. (Doc. 29-1; Doc. 29-2; Doc. 29-3; Doc. 29-4; Doc. 36 at 2-4.) He reported that his doctor gave him a "light work" restriction, limited to lifting no more than twenty pounds. (Doc. 18-3 at 6; Doc. 29-1; Doc. 29-2; Doc. 29-3; Doc. 29-4.) Spears' doctor filed a workers' compensation claim on his behalf on September 16, 2013. (Doc. 26-2; Doc. 29-1; Doc. 29-2; Doc. 36 at 3.) Spears also informed Mark Fowler and Chris Carpenter, his supervisors at the time of his injury, but said he felt the weight restriction was "excessive" and unnecessary. (Doc. 1 at 3, ¶ 19.)

Spears did not ask for sick leave or medical leave (Doc. 36 at 5-6; Doc. 37 at 8), as he felt that he could not take any time off because of the workload (Doc. 36 at 11). He alleges that WSACC knew that he was routinely violating his restrictions in an effort to address a growing workload. (Id. at 12-13.) He did ask for additional assistance in performing his duties because of his injury but says that he never received assistance, with one exception. (Id. at 11-12.) He maintains that he was able to serve in some capacity – mostly "troubleshooting" electrical or equipment failures, without having to physically exert himself – but that his lifting restriction limited his ability to fully perform his duties. (Id. at 11-14.)

During his off time, Spears continued to work on personal rental properties he owned. (Id. at 9.) At some time after injuring his back, a WSACC employee observed Spears lifting materials appearing to weigh more than 20 pounds while performing work at one of Spears' rental properties. (Doc. 18-3 at 25-27.) On September 27, 2013, Spears carried a piece of drywall that weighed more than twenty pounds at one of his rental properties and was filmed doing so by a private investigator hired by WSACC's insurance company. (Doc. 1 at 4; Doc. 18-5 at 4; Doc. 36 at 9-11, 14-15; Doc. 37 at 1.) WSACC terminated Spears on October 14, 2013, for fraud. (Doc. 25-1 at 5-6.)

Spears' termination occurred in the midst of discussions

3

concerning his job performance. In April 2013, Spears received his annual evaluation, covering his performance from April 3, 2012, through April 3, 2013. The assessment noted his inefficiency, lack of leadership skills, inability to prioritize work and staff projects, and ineffective communication. (Doc. 26; Doc. 26-1.) The evaluation specifically noted his repeated absence from work, which the evaluation explained by pointing to Spears' need to take time off from work to attend "an extraordinary number of appointments." (Doc. 26-1 at 3.) But the evaluation also commended him for his overall competency and initiative. (Doc. 26; Doc. 26-1.) This followed Spears' 2012 evaluation, which contained similar remarks and an overall score of 3.93 out of 9 (1-3 is "unsatisfactory"; 4-6 is "expected"; and 7-9 is "exceptional"). (Doc. 27; Doc. 34 at 15-20; Doc. 37 at 4-5.)

Spears' supervisors extended his 2013 evaluation period through July 2013 and met with him several times to discuss his performance. (Doc. 18-2 at 18-20; Doc. 18-3 at 10-11; Doc. 25-1 at 6-7.) During this time, Spears showed some improvement, but not with respect to his leadership abilities. (Doc. 18-3 at 10-11.) Spears disagreed with his 2013 evaluation and filed a grievance letter to appeal through an internal process. (Doc. 18-4 at 6-9) WSACC convened a hearing panel to address Spears' appeal but ultimately decided to affirm his 2013 evaluation. (Doc. 39 at 12-14.)

Spears filed the instant action against WSACC on October 15, 2015, advancing claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112 and § 12117, as amended; the North Carolina Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. 95-240 et seq.; Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Civil Rights Act of 1991 and set forth in 42 U.S.C. § 2000e, et seq.; the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq.; the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. 143-422.1 et seq.; and the North Carolina Persons with Disabilities Protection Act, N.C. Gen. Stat. 168A-11 et seq. (Doc. 1 at 1.) Spears seeks compensatory damages for lost wages, benefits, and pain and suffering; punitive damages; legal costs; treble damages pursuant to N.C. Gen. Stat. § 95-243; and a mandatory injunction forcing WSACC to implement procedures preventing illegal discriminatory activities. (Doc. 1 at 8-9.)

On August 31, 2016, WSACC moved for summary judgment on all of Spears' claims. (Doc. 17.) Spears has responded (Doc. 23), and WSACC replied (Doc. 42). Each claim will be addressed in turn.[1]

---

[1] Spears did not address his Title VII claim in his response to WSACC's motion for summary judgment. (Doc. 24.) The court will consider that claim to have been waived. Skinner v. Loudoun Cty. Dep't of Mgmt. & Fin. Servs., 602 F. App'x 907, 910–11 (4th Cir. 2015) (holding that plaintiff waived his arguments against dismissal of a claim on summary judgment partially because he failed to address the claim in his response

5

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate where the pleadings, affidavits, and other proper discovery materials demonstrate that no genuine dispute as to any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-33 (1986).  The party seeking summary judgment bears the burden of initially demonstrating the absence of a genuine dispute as to any material fact.  Celotex, 477 U.S. at 323.  If this burden is met, the nonmoving party must then affirmatively demonstrate a genuine dispute of material fact which requires trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  There is no issue for trial unless sufficient evidence favoring the nonmoving party exists for a factfinder to return a verdict for that party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-

---

brief).  Regardless of waiver, Spears' claim cannot survive WSACC's motion for summary judgment.  To establish a prima facie retaliation claim under Title VII, a plaintiff must show that (1) he engaged in a protected activity, (2) the defendant took an adverse employment action against him that a reasonable employee would find materially adverse, and (3) there was a causal link between the two events.  Adefila v. Select Specialty Hosp., 28 F. Supp. 3d 517, 524 (M.D.N.C. 2014) (citing Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 410 (4th Cir. 2013)).  There are two types of protected activities under Title VII: (1) participation in a Title VII investigation, proceeding, or hearing, and (2) opposition to any practice made unlawful under this subchapter.  Title VII § 704(a), 42 U.S.C. § 2000e-3(a); E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 405 (4th Cir. 2005).  Spears has not alleged participation in either type of protected activity.

50, 257 (1986). In addition, the nonmoving party is entitled to have the "credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him." Metric/Kvaerner Fayetteville v. Fed. Ins. Co., 403 F.3d 188, 197 (4th Cir. 2005) (quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)) (initial quotation marks omitted).

### B. Federal Claims

#### 1. ADA Wrongful Discharge

Spears claims that WSACC discriminated against him by terminating him because he was disabled with a back injury. (Doc. 1 ¶ 42.) To make out a prima facie case of wrongful discharge under the ADA, a plaintiff must demonstrate that (1) he "was a qualified individual with a disability"; (2) he "was discharged"; (3) he "was fulfilling h[is] employer's legitimate expectations at the time of discharge"; and (4) "the circumstances of h[is] discharge raise a reasonable inference of unlawful discrimination." Rohan v. Networks Presentations LLC, 375 F.3d 266, 273 n.9 (4th Cir. 2004) (internal quotation marks omitted). In order to survive summary judgment, a plaintiff must provide evidence supporting each of these elements. Reynolds v. Am. Nat. Red Cross, 701 F.3d 143, 150 (4th Cir. 2012). After a plaintiff establishes a prima facie case, the burden of production shifts to the defendant-employer to articulate a legitimate,

nondiscriminatory reason for the adverse employment action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Gillins v. Berkeley Elec. Co-op., Inc., 148 F.3d 413, 415–16 (4th Cir. 1998). If the employer does so, the burden then shifts back to the plaintiff to demonstrate that the employer's stated reason was merely pretextual and that the employer was motivated, in fact, by a discriminatory purpose. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." (emphasis in original)).

WSACC argues that Spears cannot set forth a prima facie case of discrimination under the ADA for three reasons. First, Spears cannot show that he was otherwise qualified for his job because of his alleged workers' compensation fraud. (Doc. 18 at 7.) Second, he cannot introduce evidence that he was terminated under circumstances that raise an inference of unlawful discrimination. (Id.) Third, even if Spears could make out a prima facie case, he cannot prove that WSACC's proffered reason for termination – his fraud in relation to his workers' compensation claim – was false. (Id. at 7-8.) Spears responds by arguing that the temporal proximity between him notifying his superiors of his back injury and his termination is proof of causation and sufficient to raise an inference of discrimination under the ADA. (Doc. 24 at 6-7.)

Even if Spears could establish a prima facie case of wrongful discharge under the ADA,[2] he cannot establish that WSACC's proffered reason for terminating him was a pretext for discrimination. To do so, he must prove "both that the reason was false, and that discrimination was the real reason' for the challenged conduct." DeJarnette v. Corning Inc., 133 F.3d 293, 298 (4th Cir. 1998) (quoting Jiminez v. Mary Washington Coll., 57 F.3d 369 (4th Cir. 1995) (emphasis removed)); see also Gillins v. Berkeley Elec. Coop., Inc., 148 F.3d 413, 416 (4th Cir. 1998) (stating that "[t]his court has adopted what is best described as the 'pretext-plus' standard for summary judgment in employment discrimination cases"). Spears has failed to make such a showing.

The record demonstrates that Spears' colleagues considered him to be generally honest and likeable. And he appears to have had few disciplinary issues over his 17-year career. But Spears fails to adduce evidence sufficient for the court to discard WSACC's proffered reason for the termination, conceding that he was violating his weight restriction when working on his rental properties while pursuing a workers' compensation claim. (Doc. 18-5 at 4.) Each of the WSACC employees deposed explained that he viewed Spears' actions as fraud and dishonesty and the exclusive

---

[2] WSACC appears to concede that Spears has a disability under the ADA. Because the court will grant WSACC's motion for summary judgment, it need not address WSACC's argument that Spears' alleged fraud prevented him from being otherwise qualified for the job. (Doc. 18 at 6-9.)

reason for his termination. (Doc. 18-2 at 4, 9, 11, 19; Doc. 18-3 at 4, 11, 19; Doc. 25-1 at 6; Doc. 31 at 15, 18; Doc. 38 at 6.) Spears' direct supervisor, Carpenter, further explained that Spears violated his restriction even after affirming that he was abiding by his weight restriction at work. (Doc. 38 at 15; Doc. 40 at 4-5.) Moreover, Spears himself noted that he was given one explanation for his termination: fraud. (Doc. 18-4 at 10-11; Doc. 24 at 14; Doc. 35 at 10-11.)

Spears fails to introduce evidence that his termination was the result of unlawful discrimination under the ADA. In sum, the material facts are not in dispute: Spears reported an injury, received a light-work restriction, and was later terminated after violating that restriction while working on his home-rental business even though he was pursuing a workers' compensation claim for the injury.

Instead of providing evidence of discrimination, Spears argues that WSACC's fraud contention lacks merit, as his employer cannot prove the elements of fraud under North Carolina law. However, "it is irrelevant whether in fact plaintiff was guilty of such conduct; it matters only that the employer subjectively believed that this was so. . . . [T]he ADA demands only that courts find that the employer's determinations were not driven by discriminatory intentions." Shiflett v. GE Fanuc Automation Corp., 960 F. Supp. 1022, 1030 (W.D. Va. 1997), aff'd, 151 F.3d

1030 (4th Cir. 1998). It is of course possible that Spears was a non-compliant patient who foolishly decided to ignore his doctor's advice on his personal time. But WSACC's proffered reason – that Spears' off duty activity demonstrated that his pursuit of his workers' compensation claim and contention of injury were fraudulent – is indubitably a legitimate reason for termination. See Holder v. City of Raleigh, 867 F.2d 823, 829 (4th Cir. 1989) (finding that employer's belief that employee was not trustworthy a legitimate, nondiscriminatory reason for failure to promote); Brewer v. Dana Corp., 205 F. Supp. 2d 511, 518-19 (W.D.N.C. 2002) (finding that violation of a work rule is a legitimate, nondiscriminatory reason for discharge); Grier v. Casey, 643 F. Supp. 298, 309 (W.D.N.C. 1986) (finding that integrity and honesty are legitimate qualifications to demand of an employee).

This is true even if WSACC was mistaken. As the Fourth Circuit has explained, "[b]ad or mistaken reasons for a decision may yet be non-discriminatory." Holder, 867 F.2d at 829. Moreover, because the issue is whether Spears' termination was motivated by discriminatory intent, the court need not decide, as Spears urges, whether WSACC could prove that he actually committed fraud. Ruth v. Eka Chemicals, Inc., 92 F. Supp. 3d 526, 532 (N.D. Miss.), aff'd, 623 F. App'x 281 (5th Cir. 2015) (In disability discrimination action where plaintiff violated light-work restrictions while off-duty, court noted: "[Plaintiff] cannot

prevail by merely showing that he should not have been terminated for exceeding his restrictions.  To establish pretext, he must produce evidence demonstrating that it was not a true reason for his termination." (citation omitted)).

The court will therefore grant WSACC's motion for summary judgment on Spears' ADA wrongful discharge claim.

### 2.   ADA Retaliation

WSACC also moves for summary judgment on Spears' ADA retaliation claim, where he alleges that he was terminated because of his disability, in retaliation for filing a workers' compensation claim, and for appealing his 2013 performance evaluation. (Doc. 1 ¶ 39.)  WSACC argues that Spears cannot make out a claim for ADA retaliation because he never engaged in a protected activity under the ADA.  (Doc. 42 at 3-4.)  In his response brief, Spears does not identify what ADA protected activity resulted in WSACC's allegedly retaliatory termination. Instead, he argues that, but for his back injury, WSACC would not have accused him of fraud and terminated him.  (Doc. 24 at 14.) Spears reiterates that he requested accommodations for his back injury, but received none.  (Id.)  Finally, he explains that his claim under North Carolina's REDA "would closely parallel [his] ADA-Retaliation claim."  (Id.)

Spears confuses an ADA retaliation claim with a claim for wrongful discharge under the ADA.  In an ADA retaliation claim, an

employer discriminates against an employee after he "opposed any act or practice made unlawful by this chapter" or "made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). In a wrongful discharge claim under the ADA, an employer discriminates against a qualified employee on the basis of his disability. 42 U.S.C. § 12112(a); Gentry v. E. W. Partners Club Mgmt. Co. Inc., 816 F.3d 228, 235 (4th Cir. 2016) (noting that the "but for causation standard" applies to disability discrimination claims under the ADA).

Regardless, Spears fails to adduce facts sufficient to survive WSACC's motion because he cannot point to any instance where he engaged in a protected activity under the ADA. As WSACC correctly notes, "[f]iling a workers' compensation claim is not something that is covered by the ADA, but rather by retaliation provisions under state law." Reynolds, 701 F.3d at 154. Moreover, there is nothing in his 2013 performance evaluation that relates to his later back injury that resulted in his disability.

The court will therefore grant WSACC's motion for summary judgment on Spears' claim for retaliation under the ADA.

### 3. ADA Accommodation

Spears also argues that WSACC failed to reasonably accommodate his disability, in violation of the ADA. (Doc. 1 ¶¶ 40, 41.) To establish a prima facie case of failure to

13

accommodate under the ADA, Spears must show "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations." Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013) (citation omitted). If the plaintiff proves the elements of his failure-to-accommodate claim, the employer can avoid liability if it can show that the proposed accommodation will cause undue hardship. Reyazuddin v. Montgomery Cty., 789 F.3d 407, 414 (4th Cir. 2015) (internal quotation marks omitted).

The third element of a failure-to-accommodate claim requires an inquiry into the essential functions of the relevant position. In the context of the ADA, "[n]ot all job requirements or functions are essential." Jacobs, 780 F.3d at 579. Instead, essential functions are those "that bear more than a marginal relationship to the job at issue[.]" Tyndall v. Nat'l Educ. Ctrs. Inc. of Cal., 31 F.3d 209, 213 (4th Cir. 1994) (citation omitted). A job function is essential when "the reason the position exists is to perform that function," when there aren't enough employees available to perform the function, or when the function is so specialized that someone is hired specifically because of his or her expertise in performing that function. 29

C.F.R. § 1630.2(n)(2); see Jacobs, 780 F.3d at 579.  The ADA
identifies two factors that inform whether a particular
function is essential to a position: (1) the employer's
judgment of the essential functions, and (2) any written job
description, if prepared ahead of advertising or interviewing
candidates for a position.  See 42 U.S.C. § 12111(8).

But "even if a plaintiff is unable to perform an essential
function of the job, the court must nevertheless determine whether
the person could do the job with reasonable accommodation."  Lamb
v. Qualex, Inc., 33 F. App'x 49, 59 (4th Cir. 2002).  The burden
of identifying an accommodation that would allow a qualified
individual to perform the job rests with the plaintiff, as does
the ultimate burden of persuasion in demonstrating that such an
accommodation is reasonable.  Id.  Once the plaintiff has met his
burden of proving that a reasonable accommodation exists, the
employer may present evidence that the plaintiff's requested
accommodation imposes an undue hardship on the employer.  Id.; see
42 U.S.C. § 12112(b)(5)(A).

The term "reasonable accommodation" means "[m]odifications or
adjustments to the work environment, or to the manner or
circumstances under which the position held or desired is
customarily performed, that enable an individual with a
disability . . . to perform the essential functions of that
position."  29 C.F.R. § 1630.2(o)(1)(ii).  The ADA notes that a

15

reasonable accommodation may require job restructuring. 42
U.S.C. § 12111(9). But an employer is not required to grant a
reasonable accommodation unless it would enable the employee to
perform all of the essential functions of his position. 42 U.S.C.
§ 12111(8); Jacobs, 780 F.3d at 581.

In support of its motion, WSACC notes that Spears requested
two accommodations: (1) assistance in lifting items heavier than
20 pounds and (2) the hiring of additional employees. WSACC argues
that it provided Spears with the former by instructing Spears to
ask fellow employees for help whenever he encountered a task that
his weight restriction prohibited. (Doc. 42 at 2.) But WSACC
contends that Spears' second requested accommodation (the hiring
of additional workers) is not considered reasonable under the ADA.
(Id. at 3, n.2.)

Spears replies that WSACC paid "lip service" to its duty to
provide reasonable accommodation once he disclosed his back
injury. (Doc. 24 at 11.) In addition, Spears contends, WSACC
failed to accommodate his disability by declining to hire
additional workers, even when he was experiencing "a heavy, heavy
workload that continued to increase." (Id. at 12; Doc. 18-4 at
14.)

Ultimately, the record is disputed whether WSACC provided
Spears with his first requested accommodation. In his deposition,
Spears explained that he was not always provided adequate support,

noting that Ritchie was often unable to respond to his requests for assistance. (Doc. 35 at 17-18.) Carpenter, on the other hand, testified that "we were very clear to [Spears] that we would abide by his weight restrictions, whatever he needed, and he just needed to let us know and that he had the authority to ask any employee or manager or supervisor." (Doc. 39 at 8.) Carpenter repeats this account several times in his deposition. (Doc. 18-3 at 5-6, 13, 15, 17.)

But this dispute does not insulate Spears from summary judgment. The parties agree that lifting materials heavier than 20 pounds is a requirement of Spears' position. (Doc. 18-2 at 6; Doc. 18-3 at 20; Doc. 24 at 13.) In addition, Spears' written job description states that "[t]his work requires the regular exertion of up to 25 pounds of force." (Doc. 28-2 at 2.) Thus, lifting more than twenty pounds was an essential function of Spears' job, and neither of his accommodations would be reasonable. As the Fourth Circuit has noted, "requiring assistance for all tasks that involve lifting more than 20 pounds would reallocate essential functions, which the ADA does not require." E.E.O.C. v. Womble Carlyle Sandridge & Rice, LLP, 616 F. App'x 588, 592-93 (4th Cir. 2015) (upholding district court's finding that lifting more than 20 pounds was an essential function of plaintiff's position, based "on the [] job description, the judgment of [the defendant's] managers, the experience of [plaintiff's former

colleagues] . . . , and [the defendant's] proffered consequences . . . namely that other [employees] would have to work harder and longer, and the overall flexibility of the team would be diminished"); Peters v. City of Mauston, 311 F.3d 835, 845 (7th Cir. 2002) (holding that the employee's request that someone else do the heavy lifting for him was "unreasonable because it [would] require[ ] another person to perform an essential function of [the] job"); cf. Martinson v. Kinney Shoe Corp., 104 F.3d 683, 687 (4th Cir. 1997) ("The ADA simply does not require an employer to hire an additional person to perform an essential function of a disabled employee's position.").

Spears' ADA failure-to-accommodate claim therefore lacks merit, and WSACC's motion for summary judgment as to it will be granted.

### 4. FMLA

Spears also advances a claim for violation of the FMLA. (Doc. 24 at 14-21.) His complaint alleges that WSACC (1) interfered with his right to take FMLA leave by terminating him (Doc. 1 at 7, ¶¶ 45-47) and (2) failed to provide FMLA leave "as needed due to his injury and disabled condition" (id. at 6, ¶ 41, 45). In his briefing, Spears restyles these claims by arguing that WSACC interfered with his FMLA rights to take leave to attend his son's medical appointments, and discharged him in retaliation for exercising his rights under the FMLA. (Doc. 24 at 14-21.)

18

The FMLA provides two types of rights and protections to certain covered employees. <u>Yashenko v. Harrah's NC Casino Co., LLC</u>, 446 F.3d 541, 546 (4th Cir. 2006). First, covered employees who elect to take a leave of absence for family or medical reasons qualify for several entitlements, including "a total of 12 workweeks of leave during any 12-month period" for family- and health-related matters, 29 U.S.C. § 2612(a)(1), and have a right "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." <u>Id.</u> § 2614(a)(1)(A)-(B). Claims of alleged violations of these prescriptive rights — known as "interference" or "entitlement" claims — arise under 29 U.S.C. § 2615(a)(1), which states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

Second, the FMLA "protect[s] employees from discrimination or retaliation for exercising their substantive rights under the FMLA." <u>Yashenko</u>, 446 F.3d at 546 (citations omitted). Claims alleging violations of these rights are commonly referred to as "retaliation" or "discrimination" claims. <u>Id.</u> These rights arise under 29 U.S.C. § 2615(a)(2), which states that "[i]t shall be unlawful for any employer to discharge or in any other manner

discriminate against any individual for opposing any practice made unlawful by this subchapter."

With this background, the court turns to each claim.

### a. Interference

Spears alleges that WSACC interfered with his FMLA rights when it failed to provide him with FMLA leave time. (Doc. 1 ¶¶ 41, 45, 46, 47.) WSACC counters that Spears never pleaded this claim and never "filled out the paperwork to take FMLA leave or requested FMLA leave even though he was aware of the process for doing so." (Doc. 42 at 7.)

To proceed on an interference claim asserting a violation of substantive rights under the FMLA, a plaintiff "bears the burden of proof in establishing that he is entitled to the benefit at issue under the statute." Yashenko, 446 F.3d at 549 (citing Rhoads v. FDIC, 257 F.3d 373, 384 (4th Cir. 2001)). In addition, "[a]n employee is mandated to provide notice to her employer when she requires FMLA leave." Brushwood v. Wachovia Bank, N.A., 520 F. App'x 154, 157 (4th Cir. 2013) (quoting Rhoads, 257 F.3d at 381–82 (footnote omitted)). Proper notice "'make[s] the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave.'" Rhoads, 257 F.3d at 382–83 (quoting 29 C.F.R. § 825.302(c)). "The employee, however, need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." Id.; see also 29

C.F.R. § 825.303(b) (providing similar notice requirements for unforeseeable FMLA leave). Indeed, employees need only give verbal notice "sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c) (noting that an FMLA-qualifying event includes "a condition [that] renders the employee unable to perform the functions of the job"); 29 C.F.R. § 825.301(b) ("An employee giving notice of the need for FMLA leave must explain the reasons for the needed leave so as to allow the employer to determine whether the leave qualifies under the Act."). As the Fourth Circuit has explained, "no 'magic words' are necessary to invoke the protections of the FMLA." Dotson v. Pfizer, Inc., 558 F.3d 284, 293 (4th Cir. 2009). "The critical question is how the information conveyed to the employer is reasonably interpreted." Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 402 (3d Cir. 2007). "Once the employee has provided at least verbal notice of a serious health condition sufficient to alert the employer to the fact that the protections of the FMLA may apply, '[t]he employer should inquire further to ascertain whether it is FMLA leave that is being sought and to obtain further details of this leave.'" Brushwood, 520 F. App'x at 157 (quoting Rhoads, 257 F.3d at 383).

Here, Spears' various claims fail for several reasons. His arguments based on his son's medical appointments are outside the

pleadings. The complaint alleges a failure to provide FMLA leave based only on Spears' "injury and disabled condition." (Doc. 1 at 7, ¶¶ 45-47.) Spears is attempting to raise an FMLA claim involving his son in response to WSACC's motion for summary judgment. But he cannot raise new claims after discovery unless he amends his complaint, which he has not done. Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 617 (4th Cir. 2009); Hexion Specialty Chemicals, Inc. v. Oak-Bark Corp., No. 7:09-CV-105-D, 2011 WL 4527382, at *7-11 (E.D.N.C. Sept. 28, 2011). His claims involving his son will be dismissed on this ground.

As to his interference claim regarding his back injury, this claim fails because Spears is unable to establish that he ever asked for or sought time off because of it. In fact, on multiple occasions Spears adamantly denies ever seeking FMLA leave. (Doc. 18-4 at 18, 20, 25-27.) For example, as to his back injury, when asked if he filled out the paperwork to take FMLA time, he responded: "No. I've used medical leave in times of past, shoulder, knee, but not at this time. There was, there was no major issue. I mean, it was a, it was a back sprain." (Doc. 37 at 8.) Spears' coworkers also testified that Spears never requested FMLA leave time. (Doc. 18-2 at 16-17; Doc. 18-3 at 24; Doc. 40 at 6.) While Spears takes issue with his inability to use the "comp time" that he had acquired over his years of service, (Doc. 18-4 at 17-20), his decision not to exercise his rights under

the FMLA prevents him from now arguing that WSACC interfered with his doing so. For similar reasons, as to his son's medical appointments, there is no evidence that Spears ever sought FMLA leave before attending any of them, or that he even advised his supervisors until well afterwards, when his unexplained absences were made a ground of his evaluation. (See Doc. 24 at 20.)

For all these reasons, the court will grant WSACC's motion for summary judgment on Spears' claim for FMLA interference.[3]

### b.  Retaliation

With respect to his claim of FMLA retaliation, Spears argues that WSACC terminated him for being absent from work while he was taking his son to medical appointments. (Doc. 24 at 14-21.) Spears also contends that WSACC failed to give him notice of his rights under the FMLA when he elected to take this leave. (Id. at 20.) As with the interference claim, WSACC argues that Spears never requested FMLA leave and never pleaded this claim in his complaint. (Doc. 42 at 7.)

---

[3] In addition, as noted above, WSACC has produced sufficient evidence that it terminated Spears because it believed he was committing fraud and violating its trust. (Doc. 18-2 at 9; Doc. 31 at 18.) This further illustrates the weakness of Spears' FMLA interference claim. Mercer v. Arc of Prince Georges Cty., Inc., 532 F. App'x 392, 397 (4th Cir. 2013) (affirming grant of summary judgment for employer where it submitted sufficient evidence that it would have terminated employee regardless of her FMLA leave); Kariotis v. Navistar Int'l Transp. Corp., 131 F.3d 672, 680-81 (7th Cir. 1997) (holding that there is no FMLA interference claim where employer discharges employee based on honest belief that employee is not taking FMLA for approved purpose).

WSACC is correct.  As noted above, Spears' complaint fails to allege a retaliation claim involving his son; rather, this argument is raised in response to WSACC's motion for summary judgment.  Because it is too late to raise new grounds absent amendment of the complaint, this claim fails.  <u>Wahi</u>, 562 F.3d at 617; <u>Hexion Specialty Chemicals</u>, 2011 WL 4527382, at *7-11.

Even if this were not so, Spears' claim would also fail as a matter of law.  Spears contends that he alerted WSACC to his son's medical needs[4] when he filed a grievance in response to his 2013 performance evaluation.  (Doc. 24 at 15-16.)  But Spears has not included this grievance letter in the record.  Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record."); Local Rules 7.2(a) and 56.1(e).  Moreover, even if Spears could demonstrate a prima facie case, namely "that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity," <u>Cline v. Wal-Mart Stores, Inc.</u>, 144 F.3d 294, 301 (4th Cir. 1998), WSACC has responded by "offer[ing] a non-discriminatory explanation" for

---

[4] According to Spears, his son suffered a shoulder injury that required several medical appointments, surgery, and physical therapy.  (Doc. 24 at 15-16.)  The court will assume that this meets the definition of a "serious medical condition" under the ADA, 29 C.F.R. § 825.113, as it appears that the condition required continuing treatment, as defined in 29 C.F.R. § 825.115.

the termination, which returns the burden to Spears to "establish[]
that the employer's proffered explanation is pretext for FMLA
retaliation," Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 502
(4th Cir. 2001); see also Yashenko, 446 F.3d at 551. Spears
concedes: "It is undisputed that the sole reason [WSACC] terminated
the Plaintiff's employment was because [WSACC] alleged the
Plaintiff committed WC insurance fraud." (Doc. 24 at 14.) Because
Spears cannot demonstrate pretext, for the reasons discussed
above, WSACC is entitled to summary judgment. Yashenko, 446 F.3d
at 551 (affirming grant of summary judgment after plaintiff
introduced evidence consistent with employer's legitimate
nondiscriminatory reason for termination).[5]

For all these reasons, WSACC's motion for summary judgment as
to Spears' FMLA retaliation claim will be granted.

C.    State Law Claims

Having granted summary judgment on Spears' federal claims,
the court has "wide latitude in determining whether or not to
retain jurisdiction over [the remaining] state claims." Shanaghan

---

[5] Moreover, the crux of the problem in the 2013 performance evaluation
was Spears' failure to mention his son's medical needs until *after* Spears
had missed work on several occasions and received the evaluation,
preventing WSACC from ascertaining whether he was exercising his rights
under the FMLA while away from work. Indeed, WSACC employees testified
that they did not know why Spears was frequently absent from work. (Doc.
40 at 2-3.) Spears himself affirmed that he did not request FMLA
leave despite understanding how to do so. (Doc. 18-4 at 25-27.)
Thus, because Spears has failed to show that WSACC was aware that he was
taking FMLA time, he cannot prove that his discharge was "causally
connected to [his] protected activity." Cline, 144 F.3d at 301.

v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995); see 28 U.S.C. § 1367(a), (c)(3). In determining whether to exercise supplemental jurisdiction under 28 U.S.C. § 1367, the district court should consider the "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Shanaghan, 58 F.3d at 110 (citation omitted). The doctrine of supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). A federal court may decline supplemental jurisdiction, however, when a state claim "raises a novel or complex issue of State law" or "substantially predominates" over federal claims. See 28 U.S.C. § 1367(c).

Here, it is appropriate for the court to exercise its discretion under 28 U.S.C. § 1367(c) and retain jurisdiction over Spears' State law claims. Spears sought review in federal court from the outset, so a decision by this court on his State claims would hardly be unfair. (Doc. 1.) In addition, his State law claims arise from the same facts as his federal claims, making determination by this court more convenient for the parties and most sensible when considering judicial economy. Finally, Spears' State law claims do not raise novel or complex issues of State law or substantially predominate over federal claims.

### 1. REDA

REDA prohibits the discharge of an otherwise terminable-at-will employee in retaliation for various protected activities, such as filing a claim for worker's compensation. See N.C. Gen. Stat. § 95-241(a)(1)(a). To state a claim under REDA, a plaintiff must show that "(1) he exercised his right to engage in a protected activity, such as filing a workers' compensation claim; (2) he suffered an adverse employment action, and (3) a causal connection exists between the exercise of the protected activity and the alleged retaliatory action." Smith v. Computer Task Grp., Inc., 568 F. Supp. 2d 603, 613 (M.D.N.C. 2008) (citing Wiley v. United Parcel Serv., Inc., 164 N.C. App. 183, 186, 594 S.E. 2d 809, 811 (2004)). If a plaintiff presents a prima facie case of retaliatory termination, the burden shifts to the defendant to show, by a preponderance of the evidence, that it "would have taken the same unfavorable action in the absence of the protected activity of the employee." Smith, 568 F. Supp. 2d at 613 (citing 10 N.C. Gen. Stat. § 95-241(b)). "Although evidence of retaliation . . . may often be completely circumstantial, the causal nexus between protected activity and retaliatory discharge must be something more than speculation." Smith, 568 F. Supp. 2d at 613 (citing Swain v. Elfland, 145 N.C. App. 383, 387, 550 S.E.2d 530, 534 (2001)).

WSACC argues that Spears cannot establish a prima facie case

under REDA because he cannot prove a causal connection between the filing of his workers' compensation claim and his termination. (Doc. 18 at 13-14.)  In addition, WSACC contends that – even if Spears were to establish a prima facie claim under REDA – WSACC's allegations of Spears' fraud show that it would have terminated him regardless of his workers' compensation claim.  (Id. at 14.)

In response, Spears argues that the temporal proximity between the filing of his workers' compensation claim (on or about September 16, 2013) and his termination (October 14, 2013) establishes causation under REDA.  (Doc. 24 at 3.)  In addition, he argues that WSACC cannot prove that it would have terminated him even if his workers' compensation claim had not been filed, noting that WSACC can only "point[] to one single reason for terminating Spears' employment."  (Id. at 5.)  Finally, Spears argues that WSACC failed to follow its progressive disciplinary procedures before terminating him.  (Id.)

The court agrees with WSACC.  Even assuming, without deciding, that Spears has made out a prima facie REDA claim, the fact that WSACC cited the "single reason" it did for terminating Spears suffices to meet its burden under REDA.  Wiley v. United Parcel Serv., Inc., 102 F. Supp. 2d 643, 650-51 (M.D.N.C. 1999), aff'd, 11 F. App'x 176 (4th Cir. 2001) (explaining that once the employer "articulates a legitimate nondiscriminatory reason" the burden shifts to the employee to show that the given reason was a pretext

for retaliation (citing Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996) (emphasis added) (quotation omitted)).  In addition, Spears' allegation that WSACC failed to follow its progressive disciplinary procedures before terminating him is inapposite here, especially given the stated reason of fraudulent activity.  "[A federal court] does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." DeJarnette v. Corning Inc., 133 F.3d 293, 298-99 (4th Cir. 1998) (quotations and citations omitted)); see also EEOC v. Clay Printing Co., 955 F.2d 936, 946 (4th Cir. 1992).  In addition, as noted above, Spears has failed to make a sufficient showing that WSACC's reason for terminating him was pretextual.  The court will therefore grant summary judgment for WSACC on Spears' REDA claim.

### 2. North Carolina Public Policy

Spears concedes that his claim for violation of North Carolina public policy is "dependent on the REDA claim."  (Doc. 24 at 21.) Because the court will grant summary judgment for WSACC on Spears' REDA claim, the court will also grant summary judgment for WSACC on Spears' claim under North Carolina public policy.

## III. CONCLUSION

For the reasons stated, the court finds that the record reflects no genuine dispute as to any material fact and that WSACC is entitled to judgment as a matter of law.

IT IS THEREFORE ORDERED that WSACC's motion for summary judgment (Doc. 17) is GRANTED and this action is DISMISSED WITH PREJUDICE.

/s/    Thomas D. Schroeder
United States District Judge

May 24, 2017